IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **ST. PAUL FIRE AND MARINE INSURANCE COMPANY**<br>1 Tower Square<br>Hartford, CT 06183-0001<br><br>    **Plaintiff,**<br><br>v.<br><br>**UNDER ARMOUR, INC.**<br>1020 Hull Street, Third Floor<br>Baltimore, MD 21230<br><br>    **Defendant.** | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | **CIVIL ACTION NO.:  22-1175-BAH** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**[REDACTED]**
**COMPLAINT FOR DECLARATORY JUDGMENT AND MONETARY RELIEF**

Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") files this Complaint for Declaratory Judgment and monetary relief against Under Armour, Inc. ("Under Armour") and alleges:

## I.    NATURE OF ACTION

1.    This is an action for declaratory judgment, pursuant to 28 U.S.C. § 2201-02, and for monetary relief, regarding questions in actual controversy between the parties concerning insurance coverage for a settlement of claims and/or counterclaims asserted against Under Armour in the United States District Court for the Eastern District of North Carolina, titled Kelsey Battle v. Under Armour, Inc., Case No. 5:17-cv-00627 and/or Under Armour, Inc. v. Battle Fashions, Inc. and Kelsey Battle, Case No. 5:19-cv-297 (the "Underlying Actions").

2. There are real, substantial and justiciable issues in controversy between the parties with respect to whether, and if so how much, indemnity is available under an umbrella insurance policy issued by St. Paul to Under Armour for the settlement of the Underlying Actions.

3. The parties, along with nonparty Federal Insurance Company ("Chubb"), agreed to advance amounts to settle the Underlying Actions subject to a subsequent apportionment.

## II. PARTIES

4. Plaintiff St. Paul is a corporation organized and existing under the laws of Connecticut, with its principal place of business in Hartford, Connecticut.

5. Defendant Under Armour is, upon information and belief, a Maryland corporation with its principal place of business in Baltimore, Maryland.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the matter in controversary involves a dispute between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) as Under Armour resides in this district and the matter in controversy concerns insurance policies issued to Under Armour in this district.

## IV. FACTUAL ALLEGATIONS

### A. The Underlying Actions

8. In the Underlying Actions, Kelsey Battle and/or Battle Fashions, Inc. (collectively "BFI") asserted claims and/or counterclaims against Under Armour for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et. seq*. and/or North Carolina General Statute § 75-1.1.

9. BFI, the owner of a federally registered trademark, "ICAN," U.S. Reg. No. 3,081,141, issued on April 18, 2006, claimed infringement and unfair competition against Under Armour in connection with Under Armour's sponsorship of a world-famous NBA All-Star basketball player, Wardell Stephen "Steph" Curry, II, and a line of men's sporting apparel, known as the Under Armour "SC" Line, that used a motivational phrase, "I can do all things."

10. In January 2015, Under Armour and Steph Curry launched the first Under Armour SC signature shoes, the Curry One, on which the phrase "I can do all things" appeared on the inside of the tongue of the shoe (the "Curry Launch"). Under Armour later marketed additional shoes and other sportswear in the Under Armour SC Line as part of the Curry Launch, some of which depicted the same phrase.

11. The phrase "I can do all things" is a portion of the Bible verse, Philippians 4:13, "I can do all things through Christ who strengthens me."

12. In the Underlying Actions, BFI sought substantial sums of money from Under Armour in allegedly lost royalties and/or disgorgement of profits obtained from unjust enrichment in connection with the Curry Launch.

13. The sums sought by BFI for unjust enrichment are based upon Under Armour's alleged profits generated by the Under Armour "SC" Line and the Curry Launch, and not from any actual damages or injury suffered by BFI.

14. Separately, and unrelated to its sponsorship of Mr. Curry and the Curry Launch, Under Armour also placed a motivational phrase "I can and I will" on two t-shirt products within its girls' athletic line. That separate use allegedly began in April 2014.

15. While BFI has also claimed that Under Armour's use of this separate phrase on that separate product line is a separate infringement of the "ICAN" trademark, there is no

evidence that such use caused any damages to be incurred by BFI or generated any profits that were realized by Under Armour.

16. The parties to the Underlying Actions exchanged pretrial expert reports and conducted expert discovery on damages allegedly sustained by BFI and/or profits realized by Under Armour. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

17. The parties to the Underlying Actions engaged in efforts to settle their dispute. Concurrently, the parties to this action, along with nonparty Chubb, Under Armour's primary insurer, also engaged in efforts to reach agreement on a precise formula for their various contributions toward funding of the settlement, with St. Paul and Under Armour disputing the availability and/or extent of coverage under its policy.

18. An opportunity eventually arose to settle the Underlying Actions for $██████. Chubb agreed to contribute ██████████████████████ towards this amount. While Under Armour and St. Paul were unable to reach agreement on a precise formula for their ultimate, respective obligations to contribute towards the remaining amount, Under Armour agreed to advance $████████ and St. Paul agreed to advance $████████, subject to a later reapportionment, without prejudice, and with each party reserving all rights.

19. On July 14, 2021, the Underlying Actions were settled for $████████, funded by the amounts advanced by St. Paul, Under Armour and Chubb.

**B. The St. Paul Umbrella Policy**

20. St. Paul issued a Specialty Commercial Umbrella Liability Policy, Policy No. ZUP-15P81829-13-NF to Under Armour, for the policy period from September 1, 2013 to September 1, 2014 (the "St. Paul Umbrella Policy"). A copy of the St. Paul Umbrella Policy is attached as **Exhibit A**. St. Paul did not issue any liability policies to Under Armour for any other relevant policy periods.

21. Subject to its specified terms and conditions, the St. Paul Umbrella Policy provides insurance subject to limits of $25,000,000 for each occurrence and in the aggregate, for covered damages, excess to proper exhaustion of an applicable Retained Limit.

22. The Insuring Agreement of the St. Paul Umbrella Policy states, in relevant part:

> I. Coverage
>
> A. We will pay on behalf of:
>
>> 1. the **Insured** all sums in excess of the **Retained Limit** that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law; . . .
>
> \* \* \*
>
> because of:
>
> \* \* \*
>
>> 2. **Personal Injury** or **Advertising Injury** that is caused by an **Occurrence** committed during the **Policy Period**;
>
> B. **Retained Limit** means the greater of the following:
>
>> 1. the total of the applicable limits of all **Scheduled Underlying Insurance**, and the applicable limits of any **Other Insurance**, for… **Advertising Injury** covered by such **Scheduled Underlying Insurance** or **Other Insurance**; …

5

> H. The applicable limits of any **Scheduled Underlying Insurance**…shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment with respect to **Claims** or **Suits** seeking damages which are not covered by this policy.

> \* \* \*

23. The St. Paul Umbrella Policy also contains certain definitions and defines **Advertising Injury** as:

> C. **Advertising Injury** means injury, other than **Bodily Injury** or **Personal Injury**, arising out of your business and caused by one or more of the following offenses:
>
> \* \* \*
>
> 3. unauthorized use in your **Advertisement** of another's **Advertising Idea**; or
>
> 4. infringement in your **Advertisement** of another's copyright, trade dress, or **Slogan**.

24. The St. Paul Umbrella Policy defines **Advertisement** as:

> A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition:
>
> 1. notices that are published include material placed on the Internet or similar electronic means of communication;
>
> 2. only that part of your website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an **Advertisement**; and
>
> 3. the placing of advertising, borders or frames for you or others, or links for or to others, on or in your website is not considered an **Advertisement**.

25. The St. Paul Umbrella Policy defines **Advertising Idea** as:

B.  **Advertising Idea** means a manner or style of Advertisement that others use and intend to attract attention in their **Advertisement.** However, information used to identify or record customers or supporters, such as a list of customers or supporters, shall not be considered to be an **Advertising Idea.**

26. The St. Paul Umbrella Policy defines **Slogan** as:

Y.  **Slogan** means a phrase that others use and intend to attract attention in their **Advertisement**. However, a **Slogan** does not include a phrase used as, or in, the name of:

   1. any person or organization, other than you; or

   2. any business or any of the premises, goods, products or services of any person or organization, other than you.

27. As relevant here, the St. Paul Umbrella Policy defines an **Occurrence** as:

O.  **Occurrence** means:

$$*\quad *\quad *$$

   3. as respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All **Advertising Injury** caused by the same or related injurious material, act or offense shall be considered to be caused by one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used or the number of persons or organizations making **Claims** or bringing **Suits**.

C.  **The Coverage Dispute**

28. Under Armour has demanded insurance coverage for the monetary and other relief sought and eventually paid in a settlement of the Underlying Actions under the St. Paul Umbrella Policy.

29. St. Paul maintains that most or all of the monetary and other relief sought and eventually paid in a settlement in the Underlying Actions are outside of the coverage of the St. Paul Umbrella Policy.

30. For example, the St. Paul Umbrella Policy provides coverage for damages because of Advertising Injury if and only if that Advertising Injury is caused by an enumerated offense committed during the Policy Period. The Curry Launch – which began in January 2015 - indisputably commenced after expiration of the Policy Period – September 1, 2014.

31. Under Armour has nonetheless contended that all of the amounts sought and eventually paid in the settlement in connection with the Curry Launch must be deemed to have been caused by an enumerated offense committed during the St. Paul Umbrella Policy Period.

32. Moreover, the St. Paul Umbrella Policy responds only to otherwise covered amounts that Under Armour becomes legally obligated to pay as damages. Sums awarded as disgorgement of profits are not damages covered under the St. Paul Umbrella Policy.

33. BFI's claims sought, *inter alia*, disgorgement of Under Armour's profits from its alleged unjust enrichment; all such claims – although not covered under the St. Paul Umbrella Policy – were included in the July 14, 2021 settlement, and Under Armour has demanded that St. Paul provide coverage for such disgorgement.

34. No coverage is available under the St. Paul Umbrella Policy absent proper exhaustion of an applicable Retained Limit. The Retained Limit includes Chubb Policy No. 3588-61-57, policy period September 1, 2013 to September 1, 2014 (the "Chubb Policy") as Scheduled Underlying Insurance.

35. The terms of the Chubb Policy substantially differ from the terms of the St. Paul Umbrella Policy.

36. Upon information and belief, Under Armour and Chubb have maintained that the amounts sought (and eventually paid in settlement) in connection with the Curry Launch in the Underlying Actions are properly payable under the Chubb Policy, despite the fact that the offenses giving rise thereto were not committed during the Chubb policy period.

37. To the extent Under Armour and Chubb are correct, amounts paid in settlement in connection with the Curry Launch cannot impair or exhaust the Retained Limit of the St. Paul Umbrella Policy, which provides that the "applicable limits of any Scheduled Underlying Insurance…shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment with respect to Claims or Suits seeking damages which are not covered by this policy."

38. Under Armour nonetheless has maintained that amounts paid in settlement of the claims in connection with the Curry Launch under the Chubb Policy will impair or exhaust the Retained Limit.

39. An actual case or controversy exists therefore between St. Paul and Under Armour regarding the availability and/or extent of insurance coverage under the St. Paul Umbrella Policy for the relief sought, and the parties' corresponding obligations towards an apportionment or reapportionment of the settlement of the Underlying Actions.

**D.    The Agreement Between Under Armour and St. Paul**

40. Beginning in July 2021, St. Paul, Under Armour, and Chubb engaged in efforts to reach an agreement regarding the funding of the settlement of the Underlying Actions despite the ongoing coverage dispute.

41. Specifically, on July 3, 2021, St. Paul agreed to advance the amount of $[redacted] toward the funding of the settlement. *See* July 3, 2021 email correspondence from

9

Christopher Newkirk on behalf of St. Paul, attached hereto as **Exhibit B.** St. Paul's offer was subject to St. Paul's reservation of rights "including the right to seek allocation between covered and non-covered claims and recoupment of some or all of [St. Paul's] settlement payment from [Under Armour] and/or Chubb." *Id.* In so stating, St. Paul confirmed that it was interested in entering into an interim funding agreement with Under Armour to reserve the rights of all parties "to seek reallocation and/or recoupment" of their contributions toward funding of the settlement of the Underlying Actions. *Id.*

42. On July 7, 2021, St. Paul reiterated its interest and offer of an interim funding agreement, which would "reserve[] all rights of all parties," including the parties' right to seek reallocation or recoupment of their contributions toward funding of the settlement of the Underlying Actions. *See* July 7, 2021 email correspondence from Joy Fausey on behalf of St. Paul, attached hereto as **Exhibit C**.

43. On July 8, 2021, Under Armour agreed to St. Paul's proposal regarding an interim funding agreement, subject to a "full reservation of rights to seek to reapportion" each parties' contribution toward settlement of the Underlying Actions (the "Agreement"). *See* July 8, 2021 email correspondence from Michael Sharkey on behalf of Under Armour, attached hereto as **Exhibit D**.

44. The terms of the Agreement were: (1) the parties would advance funds toward settlement of the Underlying Actions; (2) the advancing of funds would be subject to a mutual reservation of rights; and (3) the advancing of funds would be subject to reallocation and reapportionment between covered and non-covered claims following settlement of the Underlying Actions.

45. The parties subsequently confirmed the Agreement on multiple occasions. *See e.g.*, July 9, 2021 email correspondence from Christopher Newkirk on behalf of St. Paul, attached hereto as **Exhibit E**; First July 9, 2021 email correspondence from Michel Sharkey on behalf of Under Armour, attached hereto as **Exhibit F**; Second July 9, 2021 email correspondence from Michel Sharkey on behalf of Under Armour, attached hereto as **Exhibit G**; July 11, 2021 email correspondence from Christopher Newkirk on behalf of St. Paul, attached hereto as **Exhibit H.**

46. Based upon the parties' mutual agreement, the parties continued to negotiate the settlement of the Underlying Actions through counsel.

47. As further evidence of their agreement, on July 11, 2021, St. Paul prepared and circulated a draft "Funding and Non-Waiver Agreement," which would formalize an interim funding agreement in writing. *See* Funding and Non-Waiver Agreement, attached hereto as **Exhibit I**. Although this formal writing was not finalized or executed, the parties' Agreement, as stated previously, remained intact and valid.

48. On July 12, 2021, the Underlying Actions were settled for $███████. Chubb agreed to contribute ███████████████████████ towards this amount. Under Armour agreed to advance $████████. St. Paul agreed to advance $████████, subject to the mutual reservation of rights regarding financial apportionment and allocation. *See* July 14, 2021 email correspondence from Christopher Newkirk, attached as **Exhibit J**.

49. Although Under Armour and St. Paul continued their efforts to resolve their differences, they were unable to reach agreement on the proper allocation and apportionment of the settlement between covered and non-covered claims. Accordingly, St. Paul seeks the Court's assistance in that determination.

## COUNT I - Declaratory Relief

50. St. Paul adopts by reference the allegations set forth in Paragraphs 1-49 as if fully set forth herein.

51. BFI sought monetary and other relief for Under Armour's alleged acts of infringement committed during the Curry Launch. Those claims were eventually settled, including with amounts advanced by St. Paul under a reservation of all rights and, by agreement between Under Armour and St. Paul, subject to a later reapportionment.

52. To the extent the settlement included damages because of Advertising Injury, as that term is defined in the St. Paul Umbrella Policy, no coverage is available thereunder unless the offense causing the Advertising Injury was committed between September 1, 2013 and September 1, 2014.

53. Any Advertising Injury offense in connection with the Curry Launch was committed after September 1, 2014.

54. No coverage is therefore available to Under Armour under the St. Paul Umbrella Policy for any amounts expended in settlement of the Underlying Actions because of the Curry Launch.

55. BFI sought disgorgement of Under Armour's profits for its alleged acts of infringement and unjust enrichment; those claims were among those settled on July 14, 2021.

56. The indemnity coverage provided by the St. Paul Umbrella Policy is limited to otherwise covered damages that Under Armour becomes legally obligated to pay.

57. Disgorgement, or restitution, is an equitable remedy for a claim of unjust enrichment, not a legal remedy, and disgorged profits are not sums that Under Armour would be "legally obligated to pay as damages by reason of liability imposed by law."

58. Accordingly, St. Paul has no indemnity obligation to Under Armour in connection with any sums incurred in the settlement of claims for unjust enrichment or for disgorgement of profits in the Underlying Actions.

59. St. Paul's obligations under the St. Paul Umbrella Policy are excess to proper exhaustion of an applicable Retained Limit, which is inclusive of Scheduled Underlying Insurance, including the Chubb Policy.

60. The Retained Limit cannot, however, be impaired or properly exhausted by payment of damages not covered by the St. Paul Umbrella Policy.

61. Any sums paid under the Chubb Policy in settlement of the Curry Launch or as a result of alleged unjust enrichment or for disgorgement of profits in the Underlying Actions cannot impair or properly exhaust the Retained Limit.

WHEREFORE, St. Paul prays for the following relief:

a. That this Court declares the rights, duties and obligations of the parties;

b. that this Court declare that St. Paul has no duty to indemnify Under Armour with respect to the amounts paid in settlement of the Underlying Actions as respects the Curry Launch;

c. that this Court declare that St. Paul has no duty to indemnify Under Armour in the Underlying Actions for disgorgement of profits paid in settlement of claims that Under Armour was unjustly enriched by the use of a confusingly similar trademark;.

d. that this Court declare that St. Paul owes no obligation to indemnify Under Armour with respect to settlement amounts that did not properly exhaust the applicable limits of the Chubb Policy by payment of amounts covered by the St. Paul Umbrella Policy;

e.  In the event that the Court determines that St. Paul owes some obligation to indemnify Under Armour for the settlement, that this Court declare that Under Armour is obligated to reimburse St. Paul for amounts St. Paul has paid to settle any uncovered claims; and further that the Court determine the appropriate formula or ratio applicable to reapportionment of St. Paul's and Under Armour's contributions towards the July 14, 2021 settlement based on the ratio of covered to noncovered indemnity amounts; and

f.  for such other and further relief as the Court deems just and proper.

## COUNT II - Unjust Enrichment

62.  St. Paul adopts by reference the allegations set forth in Paragraphs 1-61 as if fully set forth herein.

63.  Maryland law recognizes a claim for unjust enrichment when: (1) a party confers a benefit upon another; (2) the benefiting party knows or appreciates the benefit; and (3) the benefiting party's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow him or her to retain the benefit without the paying of value in return.

64.  As described above, St. Paul conferred a substantial benefit upon Under Armour by advancing $[redacted] toward the settlement of the Underlying Actions, thereby limiting Under Armour's liability for the related claims. In doing so, St. Paul incurred significant costs and expense to the extent that it advanced monies to settle claims that would not have been covered under the St. Paul Umbrella Policy.

65.  Under Armour knew and appreciated the substantial benefit conferred upon it by St. Paul, as evidenced by the series of emails exchanged by the parties and the ultimate resolution of the Underlying Actions.

66. As of the date of this Complaint, Under Armour has retained this benefit from St. Paul without the paying of value in return. Under the circumstances present, as stated above, it would be inequitable to allow Under Armour to retain the benefit without paying St. Paul value in return.

67. Stated otherwise, Under Armour has been unjustly enriched at the expense of St. Paul and should be required to pay restitution to St. Paul.

WHEREFORE, St. Paul respectfully requests that judgment be entered in its favor and against Under Armour, in an amount exceeding $75,000.00, plus interest and costs, and further requests that the Court enter such other and further relief as it deems just and proper.

Respectfully submitted,

*/s/ Kamil Ismail*
Linda S. Woolf (Bar No.: 08424)
lsw@gdldlaw.com
Kamil Ismail (Bar No.: 12053)
kxi@gdldlaw.com
Patrick F. Toohey (Bar No.: 20723)
ptoohey@gdldlaw.com
Goodell, DeVries, Leech & Dann, LLP
One South St., 20th Floor
Baltimore, MD 21202
***Attorneys for Plaintiff St. Paul Fire and Marine Insurance Company***

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December 2023 that a copy of Plaintiff St. Paul's Redacted Complaint for Declaratory Judgment and Monetary Relief was served via electronic case filing to:

| | |
|---|---|
| Imoh E. Akpan, Bar No. 30070<br>iakpan@goldbergsegalla.com<br>Goldberg Segalla, LLP<br>111 North Calvert Street, Suite 2000<br>Baltimore, MD 21202<br>Telephone: (443) 615-7533<br>Facsimile: (443) 615-7599<br>*Attorneys for Counter-Defendant Federal Insurance Company* | Michael T. Sharkey, Bar No. 23275<br>MSharkey@perkinscoie.com<br>PERKINS COIE LLP<br>700 Thirteenth Street, N.W., Suite 800<br>Washington, D.C. 20005-3960<br>Telephone: +1.202.654.6200<br>Facsimile: +1.202.654.6211<br><br>*Attorney for Defendant/Counterclaim-Plaintiff Under Armour* |
| William M. Cohn (pro hac vice motion forthcoming)<br>william.cohn@mclolaw.com<br>Cohn Baughman<br>525 W. Monroe St., Suite 1500<br>Chicago, Illinois 60661<br>Telephone: (312) 753-6608<br>Facsimile: (312) 753-6601<br><br>Emmett E. McGowan (pro hac vice motion forthcoming)<br>emmett.mcgowan@mclolaw.com<br>Cohn Baughman<br>533 Fellowship Road, Suite 120<br>Mt. Laurel, NJ 08054<br>Telephone: (856) 380-8905<br>Facsimile: (312) 753-6601<br><br>*Attorneys for Federal Insurance Company* | James P. Steele, Bar No. 13484<br>james.steele@carrmaloney.com<br>David B. Schlosser, Bar No. 21825<br>david.schlosser@carrmaloney.com<br>Carr Maloney P.C.<br>2000 Pennsylvania Avenue, NW<br>Suite 8001<br>Washington, DC 20006<br>Telephone: (202) 310-5500<br>Facsimile: (202) 310-5555<br><br>*Attorney for Counterclaim-Defendant, American Guarantee and Liability Insurance Company* |

                                                */s/ Kamil Ismail*
                                                Kamil Ismail

4884-6130-4727, v. 1